UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: _____

ABDUL-BASIR ALI, and other similarly
situated individuals,

    Plaintiff,

v.

BROTEN GARAGE DOOR SALES, LLC
f/k/a BROTEN GARAGE DOOR SALES,
INC. and GREGG D. DAVIS,

    Defendants.
_____/

**COMPLAINT**
**(OPT-IN PURSUANT TO 29 U.S.C § 216(B))**

Plaintiff ABDUL-BASIR ALI ("Plaintiff" or "Ali") and other similarly situated individuals sue defendants BROTEN GARAGE DOOR SALES, LLC f/k/a BROTEN GARAGE DOOR SALES, INC. and GREGG D. DAVIS (collectively, "Defendants") and allege:

**JURISDICTION**

1. This is an action to recover money damages for unpaid minimum wages, unpaid overtime wages, and for retaliation under Fla. Stat. § 440.205. This Court has jurisdiction pursuant to 29 U.S.C. § 216 of the Fair Labor Standards Act and federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Florida law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

2. Ali is a resident of Broward County, Florida, within the jurisdiction of this Honorable Court. Plaintiff is a covered employee for purposes of the Act.

3. Defendant BROTEN GARAGE DOOR SALES, LLC (the "Corporate Defendant" or "Broten") is a Florida limited liability company. Broten has its principal place of business in Broward County, Florida. Defendant GREGG D. DAVIS (the "Individual Defendant" or "Davis") is a resident of Broward County, Florida. Venue is proper under 28 U.S.C. § 1391(b) since both defendants reside within the Southern District of Florida and the events giving rise to the claims in this suit occurred within the Southern District of Florida.

## THE PARTIES

4. Broten is a company engaged in the business of installing and servicing garage doors throughout Florida.

5. From on or about June 1, 2007, through on or about November 11, 2017, Plaintiff worked for Broten principally as a garage door service technician.

6. During that time, Ali was an "employee" of Broten as defined under the Act (29 U.S.C. § 203) and under the Florida's Workers' Compensation statute (Fla. Stat. 440.02).

7. Broten was and is responsible for the acts of Broten's command staff, supervisors, and officers, all of whom were acting within the scope of their employment with respect to the allegations contained in this complaint.

## GENERAL ALLEGATIONS

8. Plaintiff's work as a service technician for Broten included, but was not limited to, driving to Broten's customers' homes and servicing and/or repairing garage doors.

9. Plaintiff was regularly required to drive long distances in the course of his employment.

10. Plaintiff regularly spent time driving from one customer's home to the next.

11. Plaintiff regularly spent time waiting after completing a job at a customer's home if there was not another Broten customer immediately available or ready for Plaintiff to work on their garage door.

12. Plaintiff was not paid for, among other things described in the Complaint, time spent driving and time spent waiting.

13. Plaintiff regularly worked in excess of forty hours in a workweek while employed by Broten.

14. Plaintiff was not properly paid overtime for numerous reasons set forth in this Complaint.

15. On or about 2016 or 2017, in the course of his work for Broten, Plaintiff sustained an injury to his back.

16. Plaintiff immediately reported his accident to Defendants.

17. Thereafter, Plaintiff began receiving medical treatment under Florida's worker's compensation laws.

18. After Plaintiff's accident, Davis repeatedly discouraged Plaintiff from going to his appointments with his worker's compensation doctors. Plaintiff told Davis he needed to go because he was hurt and required additional treatment.

19. Soon thereafter, on or about November of 2017, Davis accused Plaintiff of stealing.

20. Defendants have a scheme of accusing employees of stealing when they want to unlawfully terminate an employee. This scheme is reprehensible.

21. On or about November 11, 2017, Defendants terminated Plaintiff.

**COUNT I: WAGE AND HOUR VIOLATION
BY BROTEN (MINIMUM WAGE AND OVERTIME)**

22. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-21 above as if set out in full herein.

23. This action is brought by Plaintiff and those similarly situated to recover from the Corporate Defendant unpaid minimum wage and overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorneys' fees under the provisions of 29 U.S.C. § 201 et seq.

24. Section 206(a) of the Act requires an employer to pay a minimum wage to each employee under circumstances set forth in that section.

25. Section 207(a)(1) of the Act states: "No employer shall employ any of his employees . . . for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

26. The Act provides minimum standards that may be exceeded but cannot be waived or reduced. Employers must comply, for example, with any Federal, State, or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act. 29 C.F.R. § 541.4.

27. In Florida, the minimum wage in 2015-2016 was $8.05/hour and $8.10 in 2017.

28. The Corporate Defendant is and, at all times pertinent to this Complaint, was engaged in interstate commerce. At all times pertinent to this Complaint, the Corporate Defendant has operated as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and the Corporate Defendant obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic

transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. Upon information and belief, the annual gross revenue of the Corporate Defendant was at all times material hereto in excess of $500,000 per annum, and/or Plaintiff and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

29. By reason of the foregoing, the Corporate Defendant is and was, during all times material to this complaint, an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(r) and 203(s) and/or Plaintiff and those similarly situated was and/or is engaged in interstate commerce for the Corporate Defendant. The Corporate Defendant's business activities involve those to which the Act applies. The Corporate Defendant is a garage door sales, service, and repair company and, through its business activity, affects interstate commerce. The Plaintiff's work for the Corporate Defendant likewise affects interstate commerce. Plaintiff was employed by the Corporate Defendant as a garage door service technician for the Corporate Defendant's business and, among other things, regularly handled parts that moved in interstate commerce.

30. While employed by the Corporate Defendant, Plaintiff regularly worked more than 40 hours in a workweek (sometimes in excess of 60 hours per week) without being compensated at the rate of not less than one and one-half times Plaintiff's regular rate. Plaintiff was employed as a garage door service technician performing the same or similar duties as other similarly situated garage door service technicians whom Plaintiff observed working more than 40 hours per workweek without properly paid overtime compensation.

31. Plaintiff worked for the Corporate Defendant from approximately 2007 through approximately November 11, 2017. In total, Plaintiff worked approximately 91 compensable weeks under the Act if we count 3 years back from the filing of the instant action.

32. The Corporate Defendant paid Plaintiff for each job performed according to a schedule of pay based primarily upon the nature of the job performed, the parts used, and whether the work was performed on an emergency basis.

33. The Corporate Defendant did not compensate Plaintiff for, among other things, time the Plaintiff spent driving to and from job sites, waiting between jobs, driving from the job sites to Broten's offices, attending mandatory meetings, servicing Broten's truck, doing inventory in his truck, etc.

34. The Corporate Defendant deducted time from Plaintiff's total work hours on a near-daily basis, often by as much as one hour.

35. The Corporate Defendant also made improper deductions from Plaintiff's wages for road tolls or items titled "Loan" or "Bonus."

36. In addition to the Corporate Defendant's failure to pay minimum wages for all hours worked, the Corporate Defendant also did not properly compensate Plaintiff for all hours that Plaintiff worked in excess of 40 per workweek.

37. For example, Plaintiff's regular rate was artificially low due to the Corporate Defendant's failure to pay minimum wages to Plaintiff for all hours worked. Had Plaintiff properly been paid minimum wage for all hours worked, his regular rate, and therefore his overtime pay, would have been higher.

38. Plaintiff spent "off the clock" work hours during emergency service (driving, waiting, and working), which hours were never counted towards Plaintiff's overtime pay.

39. The Corporate Defendant incorrectly calculated Plaintiff's regular rate (upon which his overtime rate was based) by failing to include all wages, including emergency service wages and/or bonuses Plaintiff received during that workweek in the calculation of the regular rate.

40. By regularly and improperly reducing (in its time reporting system) the number of hours Plaintiff each worked each day by up to an hour, the Corporate Defendant caused its overtime pay calculations to be lower than they should have been.

41. Plaintiff seeks to recover unpaid minimum wages and unpaid overtime wages accumulated during the period beginning three (3) years prior to the filing of the original complaint in this action up through the date the original complaint was filed.

42. At all times material hereto, the Corporate Defendant failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiff and those similarly situated performed services and worked for the Corporate Defendant and the Corporate Defendant failed to pay at all for certain hours worked. Likewise, no provision was made by the Corporate Defendant to properly pay Plaintiff and others similarly situated at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the Act. The additional persons who may become Plaintiffs in this action are current and/or former garage door service technicians who are and who were subject to the unlawful payroll practices and procedures of the Corporate Defendant and were not paid minimum wage for all hours worked and/or were not paid time and one half of their regular rate of pay for all hours worked in excess of forty (40) in a workweek.

43. The Corporate Defendant knew and/or showed reckless disregard of the provisions of the Act concerning the payment of minimum and overtime wages and remains owing Plaintiff and those similarly situated these wages as set forth above.

44. Plaintiff and those similarly situated are entitled to recover double damages. The Corporate Defendant never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

45. The Corporate Defendant willfully and intentionally refused to pay Plaintiff minimum and overtime wages as required by the laws of the United States as set forth above and remains owing Plaintiff these minimum and overtime wages.

46. Plaintiff has retained counsel, including the undersigned attorney, to represent him in this action and is obligated to pay a reasonable attorneys' fee.

47. Only this count of this Complaint and Count II are subject to the opt-in provisions of 29 U.S.C. § 216(B).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment for Plaintiff and others similarly situated and against the Corporate Defendant on the basis of the Corporate Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff actual damages in the amount shown to be due for unpaid minimum wages and overtime compensation for hours worked in excess of forty each workweek; and

C. Award Plaintiff an equal amount in double damages/liquidated damages; and

D. Award Plaintiff reasonable attorneys' fees and costs of suit; and

E.  Grant such other and further relief, as this Court deems equitable and just.

**COUNT II: WAGE AND HOUR VIOLATION BY
<u>GREGG D. DAVIS (MINIMUM WAGE AND OVERTIME)</u>**

48.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-47 above as if set out in full herein.

49.   At the times mentioned, the Individual Defendant was, and is now, the vice president and/or officer of the Corporate Defendant. The Individual Defendant was an employer of Plaintiff and others similarly situated within the meaning of Section 3(d) of the Act [29 U.S.C. § 203(d)], in that this defendant acted directly or indirectly in the interests of the Corporate Defendant in relation to the Plaintiff and the employees of the Corporate Defendant, including Plaintiff and others similarly situated. The Individual Defendant had operational control of the Corporate Defendant, was involved in the day-to-day functions of the Corporate Defendant, made decisions as to how and how much to pay Plaintiff, provided Plaintiff with his work schedule, directly supervised Plaintiff, and is jointly liable for Plaintiff's damages as set forth in Count I.

50.   The Individual Defendant is and was at all times relevant a person in control of the Corporate Defendant's financial affairs and can cause the Corporate Defendant to compensate (or not to compensate) its employees in accordance with the Act.

51.   The Individual Defendant willfully and intentionally caused Plaintiff not to receive minimum wage and overtime compensation as required by the laws of the United States as set forth above and remains owing Plaintiff these overtime wages since the commencement of Plaintiff's employment with the Corporate Defendant as set forth above.

52. Plaintiff has retained counsel, including the undersigned attorney, to represent him in this action and is obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and those similarly situated request that this Honorable Court:

A. Enter judgment for Plaintiff and others similarly situated and against the Individual Defendant on the basis of the Individual Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff actual damages in the amount shown to be due for unpaid minimum wages and overtime compensation for hours worked in excess of forty each workweek; and

C. Award Plaintiff an equal amount in double damages/liquidated damages; and

D. Award Plaintiff reasonable attorneys' fees and costs of suit; and

E. Grant such other and further relief, as this Court deems equitable and just.

## COUNT III: VIOLATION OF FLA. STAT. § 440.205
### (RETALIATION AGAINST BROTEN ONLY)

53. On or about 2016 or 2017, the Plaintiff suffered a work-related injury, namely, he injured his back. The injury happened while Plaintiff was working for the Corporate Defendant.

54. The injury alleged above required medical treatment.

55. After the work-related accident as described above, the Plaintiff reported his injuries to the Defendants, and he requested medical treatment.

56. On or about November 11, 2017, terminated Plaintiff.

57. Plaintiff's work prior to his discharge was satisfactory or more than satisfactory, and the sole apparent reason for the termination of Plaintiff's employment was that Plaintiff sought or attempted to seek compensation under the Workers' Compensation Law, as Plaintiff was entitled to do.

58. Alternatively, a motivating factor which caused the Plaintiff's discharge, as described above, was the request and/or attempted request for worker's compensation benefits pursuant to Fla. Stat. §§ 440 et seq. Alternatively, Plaintiff would not have been fired but for his claiming worker's compensation benefits as described above.

59. Defendant's termination of the Plaintiff was in direct violation of Fla. Stat. § 440.205 and, as a direct result, the Plaintiff has been damaged.

60. By reason of Defendant's wrongful discharge of Plaintiff, Plaintiff has been damaged in that Plaintiff has suffered lost wages and has suffered emotional distress.

61. The Defendant's conduct in wrongfully discharging Plaintiff was willful, wanton, and in reckless disregard of Plaintiff's rights.

**WHEREFORE**, the Plaintiff respectfully requests judgment against Broten for all back wages from the date of discharge to the present date; front wages; emotional distress damages; punitive damages; and for any and all other relief that this Court may deem just and proper.

## JURY DEMAND

Plaintiff (and those similarly situated with respect to Counts I and II) demands trial by jury of all issues so triable as of right as to each and every Count in this Complaint.

Dated: May 3, 2019.

Respectfully submitted,

*/s/ R. Martin Saenz*
R. MARTIN SAENZ, Esq.
Florida Bar No.: 0640166
Email: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 3180
Telephone: (305) 503-5131
*Counsel for Plaintiff*